# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                 Criminal Action No. 5:15-cr-15

NICHOLAS S. DUBROWSKI,

    Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Nicholas S. Dubrowski's motion to suppress evidence filed on April 6, 2015. The United States filed a response to Dubrowski's motion on April 14, 2015. On April 15, 2015, this Court held an evidentiary hearing and argument on the motion. Dubrowski appeared in person and by his counsel Robert G. McCoid, Esq., and Todd F. La Neve, Esq. The United States appeared by Assistant U.S. Attorney Sarah W. Montoro, Esq., and Assistant U.S. Attorney Robert H. McWilliams, Jr., Esq. This Court heard testimony from Dubrowski, Sergeant James Matthews of the Marshall County, West Virginia Sheriff's Office, and Detective Randy Vogler of the Marshall County, West Virginia Sheriff's Office. During the hearing, this Court admitted Government's Exhibits 7, 8, and 9 and Defendant's Exhibit's 1, 2, and 3.

On April 16, 2015, based on testimony presented during the April 15, 2015, suppression hearing, Dubrowski filed an amended motion to suppress statements and evidence. The United States filed a response to the amended motion on April 21, 2015.

## I. INTRODUCTION

### A. Background

On March 3, 2015, Dubrowski was named in a two-count indictment plus forfeiture

allegations charging him with conspiracy and possession with intent to distribute methamphetamine, a violation of 18 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C). An initial appearance was held on March 6, 2015. Dubrowski was released on bond subject to certain conditions of release. Dubrowski now moves this Court to suppress all evidence seized and all statements obtained stemming from a search warrant executed on February 18, 2015.

**B. The Motion**s

    (1) Defendant's motion to suppress evidence. ECF No. 19.

    (2) Defendant's amended motion to suppress evidence and statements. ECF No. 26.

**C. Recommendation**

I recommend that Defendant's motion to suppress evidence and amended motion be **DENIED** because probable cause supported the authorization of a search warrant, and even if the executed search warrant was defective, the good faith exception to the exclusionary rule would apply. Further, concerning Dubrowski's amended motion, Defendant has failed to show a detailed offer of proof that Sergeant Matthews intended to mislead the authorizing judicial officer or exhibited reckless disregard in drafting his affidavit.

## II. FINDINGS OF FACT

On February 17, 2015, Officer Keith McCallen of the Marshall County, West Virginia Sheriff's Office was notified by Corporal Garrett of the Marion County, West Virginia Sheriff's Office about two individuals traveling to Moundsville, West Virginia to purchase methamphetamine from an individual known as "Country." ECF No. 21-1 at 1, ¶ 1. Corporal Garrett explained that one of the individuals was a confidential informant and the other was a woman later identified as Ashley Grogg. *Id* at 1-2, ¶¶ 1-2. The reliability of the informant was unknown to officers. *Id.* at 1, ¶ 1.

Next, Officer McCallen contacted Corporal Pond, also of the Marshall County Sheriff's Office, about the information submitted by the informant. *Id.* at 1-2, ¶ 2. That same day, Corporal Pond arranged a face-to-face meeting with the informant. *Id.* The informant told Corporal Pond that "Country" was manufacturing methamphetamine in a trailer located in the Bridgeview trailer park in Moundsville. *Id.* The informant elaborated that he has traveled with Grogg on several occasions to purchase methamphetamine from "Country" at the Moundsville trailer. *Id.* The informant contended that he had recently left Grogg at the trailer with "Country." *Id.* During his conversation with the informant, Corporal Pond noted that the informant was possibly under the influence of a controlled substance. *Id.* at 2, ¶ 3. The informant admitted to smoking methamphetamine before meeting with Corporal Pond. *Id.* During the meeting, the informant received a text message from Grogg that "that she was riding around with ["Country"] and that '[C]ountry was not mad, just stop and get me, [and] meet up.'" *Id.*

The next day, on February 18, 2015, Sergeant James Matthews of the Marshall County Sheriff's Office traveled to the Bridgeview trailer park to inspect the trailer identified by the informant. *Id.* at ¶ 6. Sergeant Matthews observed multiple propane tanks in front and behind the trailer. *Id.* During the motion to suppress hearing, Dubrowski testified that nine propane tanks were around the trailer. During Sergeant Matthews's inspection, he observed that the color of the propane tanks had changed from bronze to "copper bluish green." *Id.* at ¶ 6, 8. As later explained in his affidavit, Sergeant Matthews believed that the changing color of the propane tanks suggested exposure to anhydrous ammonia, "a key ingredient in the anhydrous method of production of methamphetamine." *Id.* at 2-3, ¶ 8-9. During the hearing, Sergeant Matthews admitted that although the anhydrous method was not commonly used in methamphetamine production in West Virginia,

3

it was still, nevertheless, one possible method of producing methamphetamine. Sergeant Matthews also observed that there were no tire tracks in the snow in front of the trailer. *Id.* at 2, ¶ 7. During the suppression hearing, Sergeant Matthews stated that a truck was located near the trailer, but the lack of tire tracks, plus the presence of fresh tire tracks near other trailers in the same trailer park, led Sergeant Matthews to infer that the trailer was not used as a residence and, instead, was used solely for methamphetamine production. *Id.*

Based on Sergeant Matthews's personal observations and the statements provided by the informant, on February 18, 2015, Sergeant Matthews drafted an affidavit and complaint for a search warrant. In the affidavit, Sergeant Matthews detailed that "a White male known only . . . as 'Country' . . . did unlawfully . . . [c]onvey or store anhydrous ammonia . . . ." *Id.* at 1. Sergeant Matthews described the location for the search as "a tan and white in color Cedar Creek brand name fifth wheel trailer" and detailed where the trailer was located in the Moundsville trailer park, the GPS coordinates of the trailer, and the driving directions to the trailer. *Id.* In his complaint for a search warrant, Sergeant Matthews sought:

> [A]ny propane tanks with visible evidence of color change due to chemical reaction of bronze metals with anhydrous ammonia that is illegally stored for the production of methamphetamine. Any and all warming plates, hot plates, glass beakers, containers both glass and metal. Any and all products or components which contain red phosphorous in both its liquid and solid state. Any and all products or components that contain Tincture of Iodine. Iodine, Red phosphorous can also be in every day household forms (containers) such as red devil lye, Drano or other products with a similar use, these need to be seized. Any and all measuring devices. Any and all laboratory equipment that would be used or could be used in the production of methamphetamine. I.E.: glass, tubing, filters. PH paper/tape. Any and all ledgers, books, electronic devices that can store information on "recipes" for the process of production of methamphetamine and a may contain numbers or names of possible customers whom consume their illegal product. Any and all modern firearms with or without serial numbers. Any and all U.S. currency. Any and all Cellular phones. Any and all indicia of residency or ownership of illegal production site. Any and all receipts that list the ingredients of methamphetamine production at

4

> a Point of Sale. Any and all containers of sudephedrine or ephedrine. Any finished or near completed methamphetamine products.

*Id.*

In support of the search warrant, Sergeant Matthews described Corporal Pond's conversations with the informant, including the unknown status of the informant's reliability, the informant's sobriety during his interview with Corporal Pond, and the text messages received by the informant from Grogg about "Country." *Id.* at 1-2, ¶¶ 1-3. Next, Sergeant Matthews described in his affidavit his observations of the trailer, the lack of snow tracks in front of the trailer, and the discolored propane tanks located around the property. *Id.* at 2, ¶¶ 6-7. Sergeant Matthews explained that he believed the discolored propane tanks were exposed to anhydrous ammonia based on his training in "a sixteen-week training academy . . . where the program of instruction included drug identification, methods of trafficking, packaging and distribution and production." *Id.* at 2, ¶ 5. In further support, Sergeant Matthews stated that he has attended a forty hour drug investigation course by the Drug Enforcement Administration and has attended the "Clandestine Methamphetamine Lab Investigations Course and Narcotics Investigation Courses." *Id.* Sergeant Matthews wrote in his complaint that the large number of discolored tanks were indicative of illegal methamphetamine activity because the tanks "can rupture at any time due to the ammonia eroding the valves of the tanks" *Id*. at 3, ¶ 10. Therefore, "[s]ome cookers will obtain fresh tanks often, resulting in the possible storage problem of numerous old tanks." *Id.* at ¶ 11. Lastly, Sergeant Matthews noted that "dealers of illegal narcotics will possibly" maintain or possess firearms or cash "at locations used for the sale or manufacture of controlled substances." *Id*. at ¶ 12-13.

On February 18, 2015, Circuit Judge David W. Hummel, Jr., signed Sergeant Matthew's search warrant and the warrant was executed later that day. *Id.* at 3. During the execution of the

search warrant, it was revealed to officers that anhydrous ammonia was not present on the property. Additionally, officers discovered that Defendant Nicholas Dubrowski lived inside the trailer, and the trailer was not used for methamphetamine production. During the suppression hearing, Dubrowski testified that he had several propane tanks around his trailer because "everything" runs on propane in his trailer – especially during colder months. In the execution of the search warrant, officer seized roughly 78 grams of suspected crystal methamphetamine, a "black ledge book [with] scale and spoon with names, amount of product sold and dollar amount owed," three loaded firearms and rifle ammunition, roughly $1400 in cash, a scale with crystal methamphetamine residue, and other miscellaneous items. ECF No. 21-2.

During the execution of the search warrant, Detective Randy Vogler of the Marshall County Sheriff's Office interviewed Dubrowski. The interview took place in Detective Vogler's police cruiser and was videotaped. Before the interview began, Detective Vogler informed Dubrowski of certain rights, including:

> Anything you say can and will be used against you in a court of law. . . . You have the right to talk to a lawyer and have him or her present with you while you're being questioned. . . . If you're under arrest and cannot afford a lawyer, one will be appointed to represent you before any questioning if you wish. (Inaudible) exercise these rights and not answer any questions or make any statements.

ECF No. 21-3 at 1-2. Dubrowski stated that he understood these rights and would "answer some questions . . . ." *Id.* at 2. During the interview Dubrowski stated that he was not making crystal methamphetamine in his trailer, however, he was distributing crystal methamphetamine to "[a] couple people." *Id.* at 6-7. He explained that he received FedEx packages containing crystal methamphetamine hidden inside car parts from a source that he communicated with via cell phone. *Id.* at 29-30, 42. Dubrowski told Detective Vogler that he sold the crystal methamphetamine in

6

various sizes from $100.00 a gram to $1700.00 an ounce. *Id.* at 44. On March 3, 2015, Dubrowski was charged with conspiracy and possession with intent to distribute methamphetamine.

### III. MOTION TO SUPPRESS

**A. Contentions of the Parties**

Dubrowski contends that the evidence seized by officers during the execution of the February 18, 2015, search warrant must be suppressed because the affidavit submitted by Sergeant Matthews "was so facially lacking in facts establishing probable cause that both the search warrant that issued based upon the same was presumptively invalid . . . ." ECF No. 19 at 2, ¶ 5. Further, Dubrowski argues that any statements obtained from him following the execution of the search warrant "were custodial statements obtained coercively" and "presumptively inadmissible . . . due to the deficiencies in the subject search warrant." ECF No. 19 at 2-3, ¶¶ 6-7.

The Government maintains that Sergeant Matthews's affidavit supports a probable cause finding. Even if the affidavit was insufficient, the Government contends that the good faith exception to the exclusionary rule would nevertheless apply. Lastly, the Government argues that Dubrowski's statements made to police "are admissible because he was advised of his Fifth Amendment rights and voluntarily and knowingly waived them" and "are not presumptively inadmissible due to alleged deficiencies in the subject search warrant." ECF No. 21 at 14, 16.

**B. Discussion**

<u>1. The Validity of the Search Warrant</u>

The Fourth Amendment of the U.S. Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be

seized.

U.S. CONST. amend. IV (emphasis added). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judicial officer's] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). A judicial officer who issues a search warrant must act in a neutral and detached manner, that is, he must not become "an adjunct law enforcement officer" or a "rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal quotations omitted). Yet, once a search warrant has been issued, review of the probable cause determination by the judicial officer is to be shown "great deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). Further, "a reviewing court must consider only the information presented to the [judicial officer] who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

The Supreme Court has described "probable cause" to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). However, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id* at 232. Accordingly, probable cause does not:

> require officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause.

*Taylor v. Farmer*, 13 F.3d 117, 121-22 (4th Cir. 1993).

Under the "totality of the circumstances" test established in *Gates*, the Supreme Court also held that probable cause may be established by an anonymous tip which has been corroborated.

*Gates*, 462 U.S. at 242. "An informant's truthfulness and reliability, while certainly relevant, are only two factors among many that courts may consider. A very detailed tip, for example, may compensate for questions about the informant's reliability, and a tip that relies on hearsay may be deemed reliable if police later can corroborate it." *United States v. White*, 549 F.3d 946, 950 (4th Cir. 2008); *see United States v. Miller,* 925 F.2d 695, 698 (4th Cir. 1991) ("One important factor in determining whether an informant's tip has established probable cause is the degree to which the arresting officer can corroborate that tip."); *but see United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (holding that an informant's tip lacked probable cause because the informant only disclosed directions to the defendant's home.). Even corroboration of innocent facts, such as the "alias, address, and the area in which [a suspect] operated . . . tends to indicate that other aspects of the [informant's] report are also correct." *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993).

As stated previously, Dubrowski contends that the information contained in Sergeant Matthews's affidavit "was so lacking in facts establishing probable cause . . . the search warrant that issued based upon" the affidavit was "presumptively invalid." ECF No. 19 at 2. However, the facts presented in Sergeant Matthews's affidavit for a search warrant, support "a fair probability that contraband or evidence" of methamphetamine production would be found in Dubrowski's trailer. *Gates*, 462 U.S. at 238. Further, the statements provided by the informant were sufficiently corroborated by Sergeant Matthews before obtaining a search warrant. While speaking with Corporal Pond, the informant indicated that "Country" was producing methamphetamine in his trailer based on the fact that he and Grogg had traveled to the trailer on multiple occasions to purchase methamphetamine from "Country." ECF No. 21-1 at 2, ¶ 2. The informant's relationship

with Grogg and "Country" was corroborated when, during the interview with Corporal Pond, Grogg text messaged the informant that she "was riding around with ['Country']. *Id.* at ¶ 3. Additionally, the likely presence of methamphetamine in "Country's" trailer was, interestingly, corroborated by the informant's admittance to being under the influence of methamphetamine while speaking with Corporal Pond just after leaving "Country's" trailer. *Id.*

During the suppression hearing, Dubrowski presented testimony to infer that the informant's sobriety went against the credibility of his statements to Corporal Pond. However, as addressed in the Government's brief, "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime . . . carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris*, 403 U.S. 573, 583 (1971). Additionally, Sergeant Matthews's inspection of Dubrowski's trailer added to the informant's credibility. The trailer identified by the informant contained multiple propane tanks, which, from a short distance, Sergeant Matthews believed to be discolored and indicative of erosion from anhydrous ammonia. The corroboration of these "innocent facts" led Sergeant Matthews to reasonably believe that the rest of the informant's statements were correct, and, in fact, Dubrowski was manufacturing methamphetamine in his trailer. *See Lalor*, 996 F.2d at 1581 ("Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct."). Therefore, because of the great deference afforded to issuing judges, and due to the informant's statements being sufficiently corroborated by Sergeant Matthews, the affidavit and complaint for a search warrant were based on probable cause and properly executed under the Fourth Amendment.

2. The "Good Faith" Exception to the Exclusionary Rule

Assuming *arguendo* that the search warrant was defective "[u]nder the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *Leon*, 468 U.S. at 926). In other words, the good faith exception applies unless "a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Leon*, 468 U.S. at 922 n.23. The Supreme Court has "noted four situations in which an officer's reliance on a search warrant would not be reasonable" under the good faith exception:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

*United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995) (citing *Leon*, 468 U.S. at 923).

Further, an unsupported, "bare bones" affidavit will not satisfy the good faith exception to the exclusionary rule. *United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996). In *Wilhelm*, the Fourth Circuit determined an affidavit was "bare bones" because the informant had only a limited phone conservation with police and the affidavit lacked "any meaningful corroboration." *Id.*

It appears that in this case, Dubrowski cites the third situation in his motion to argue that Sergeant Matthews's affidavit "was so facially lacking in facts establishing probable cause" the

11

affidavit was "presumptively invalid." ECF No. 19 at 2. However, a review of Sergeant Matthews's affidavit does not indicate that it "was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Hyppolite*, 65 F.3d at 1156. As explained above, the affidavit submitted by Sergeant Matthews was far from "bare bones," and included sufficient detail and reasonable corroboration. Additionally, unlike in *Wilhelm*, the informant had a face-to-face meeting with Corporal Pond and much of the informant's information, as discussed above, was later corroborated by Sergeant Matthews's personal visit to the trailer.

3. Detective Vogler's Interview With Dubrowski

When a subject is interrogated while in custody, a *Miranda* warning is required. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A court's "inquiry into whether an individual waived effectuation of the rights conveyed in the *Miranda* warnings has two distinct dimensions." *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002). Under *Christobal*, a waiver of a suspect's *Miranda* warnings "must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (quotation marks omitted). Next, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quotation marks omitted). "In short, a waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Simmons*, 526 F. Supp. 2d 557, 564 (E.D.N.C. 2007). Under the preponderance of the evidence, the Government has the burden to show that Dubrowski waived his *Miranda* rights. *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005).

Here, during the execution of the search warrant, Detective Vogler interviewed Dubrowski. ECF No. 21-3. In review of the evidence, Detective Vogler properly notified Dubrowski of his

*Miranda* rights and Dubrowski affirmatively stated that he knew of his rights and would "answer some questions." *Id.* at 2. Under this claim, Dubrowski contends that "[a]ny statements obtained . . . following execution of the subject search warrant were custodial statements obtained coercively and in derogation of his Fifth Amendment privilege against compelled self-incrimination." ECF No. 19 at 2. Yet, Dubrowski fails to articulate any instance where Detective Vogler, or any officer, coerced, intimidated, threatened, or tricked Dubrowski into answering any questions. In review of the transcript and audio recording of Detective Vogler's interview with Dubrowski, the undersigned finds no evidence to support that Dubrowski's waiver of his *Miranda* rights were not voluntary, knowing, and intelligent. Thus, based on the evidence provided, the Government has satisfied their burden that Dubrowski waived his *Miranda* rights before speaking with Detective Vogler.

Lastly, Dubrowski contends that "[a]ny statements obtained . . . on a post-search basis are presumptively inadmissible, even if they were otherwise secured following a proper warning . . . due to the deficiencies in the subject search warrant." ECF No. 19 at 3. "If the Government has committed a constitutional violation . . . evidence obtained as a result of the violation cannot be used unless the connection between the unlawful conduct and the acquisition of the evidence has 'become so attenuated as to dissipate the taint.'" *United States v. Seidman*, 156 F.3d 542, 548 (4th Cir. 1998) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). To consider whether the taint of the constitutional violation has purged, the Fourth Circuit looks to three factors: "(1) the amount of time between the illegal action and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.*

As to the first factor, assuming arguendo that the search warrant was defective, Detective Vogler's interview occurred roughly the same time as the execution of the search warrant. The

contemporaneousness of the search and interview with Dubrowski lean against admissibility. Yet, "although the time between the unlawful entry and the acquisition of the evidence is short, that factor alone is not dispositive." *United States v. Gross*, 199 F. App'x 219, 249 (4th Cir. 2006) (Gregory, J., concurring) (citing *Seidman*, 156 F.3d at 549).

As to the second factor, Dubrowski's voluntary waiver to speak with Detective Vogler is likely a relevant intervening circumstance. *See Seidman*, 156 F.3d at 549 (holding that the defendant's "willingness to engage in a conversation" was indicative of an intervening circumstance and an act of free will purging the primary taint).

The third factor also suggests admissibility. In consideration of the third factor, some facts "may weigh in favor of finding the conduct to be flagrant including that the illegal conduct involves 'the physical entry of the home[,] [which] is the chief evil against which the wording of the Fourth Amendment is directed.'" *United States v. Hill*, 649 F.3d 258, 270 (4th Cir. 2011) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)). Likewise, "[o]ther factors may weigh in favor of finding the conduct was not flagrant, including that the officers did not use or exploit the evidence that they obtained during the initial search to gain consent." *Id.* In this case, Detective Vogler notified Dubrowski of his *Miranda* rights and engaged in an interview lasting over an hour. Although the search of Dubrowski's home had already commenced prior to Detective Vogler's interview with Dubrowski, officers did not use any evidence collected during the search to gain consent to speak with Dubrowski nor did officers threaten or intimidate Dubrowski.[1] After receiving his *Miranda* warning, Dubrowski agreed to "answer some questions" and spoke with officers for over an hour.

---

[1] As elaborated further in *Seidman*, assuming the executed search warrant was invalid, "the flagrancy and offensiveness of the governmental misconduct in this case pales in comparison to other cases where evidence has been held inadmissible on Fourth Amendment grounds." 156 F.3d at 550 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963); *Brown v. Illinois*, 422 U.S. 590 (1975)).

ECF No. 21-3 at 2. Based on the factors in *Seidman*, even if the search warrant was invalid, Dubrowski's statements should not be suppressed because of the intervening independent acts of Dubrowki voluntarily speaking with officers for over an hour and providing detailed information to officers about drug prices and methods of drug shipping without the presence of any police coercion or threat of force.

## IV. AMENDED MOTION TO SUPPRESS

### A. Contentions of the Parties

On April 16, 2015, one day after the hearing on Dubrowski's motion to suppress, Dubrowski filed an amended motion to suppress arguing that, based on testimony presented at the hearing, Sergeant Matthews "supplied false information in his affidavit." ECF No. 24 at 4. Dubrowski concludes by contending that once the false information "is excised from the affidavit, nothing is left to substantiate probable cause upon which to issue a warrant." *Id.* at 5. The Government argues that Dubrowski's amended motion is "unfounded and . . . a blatant attempt to conjure up a *Franks* issue where one does not exist." ECF No. 28 at 1.

### B. Discussion

Based on the contentions raised in Dubrowski's amended motion, he appears to be seeking relief under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In *Franks*, the Supreme Court "held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). "*Franks* thus serves to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." *United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000).

15

To be entitled to a *Franks* hearing, Dubrowski must make a "dual showing . . . which incorporates both a subjective and an objective threshold component." *Colkley*, 899 F.2d at 300. First, Dubrowski must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56. Second, Dubrowski must show that the false statement was needed to find probable cause for the search warrant. *Id.* Beyond false statements, "[t]he *Franks* test also applies when affiants omit material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Colkley*, 899 F.2d at 300 (internal quotations omitted).

In Dubrowski's amended motion, he contends that "without question" Sergeant Matthews "supplied false information in his affidavit" and that information was material as to the finding for probable cause. ECF No. 24 at 4. In support of this claim, Dubrowski recites certain testimony from the April 15, 2015, suppression hearing to argue that Sergeant Matthews deliberately omitted certain facts in his affidavit.[2] For example, Dubrowski notes that when Sergeant Matthews personally inspected Dubrowski's trailer, a truck was located near the trailer. However, in Sergeant Matthews's affidavit, he makes no mention of a truck near the trailer, but nevertheless concludes that Dubrowski's trailer was likely used, not for residential use, but for methamphetamine production. Dubrowski also cites admitted evidence and his own testimony to support the claim that Sergeant Matthews overestimated the number of propane tanks located around Dubrowski's trailer, especially in comparison to the number of tanks near adjacent residential trailers. Lastly, Dubrowski questions

---

[2] Dubrowski also raises additional facts to support his claim for suppression–such as the alleged unreliability of the informant–in this amended motion. However, the undersigned finds that these contentions were previously raised in Dubrowski's original motion to suppress or have been previously addressed above.

16

the reasonableness of Sergeant Matthews's observation that the propane tanks located near Dubrowski's trailer were abnormally discolored because Sergeant Matthews stayed forty feet away from the trailer.

During the suppression hearing, Sergeant Matthews testified that Dubrowski was not creating methamphetamine in his trailer, and the trailer was, in fact, Dubrowski's actual residence. According to Sergeant Matthews, these realizations only occurred subsequent to the execution of the search warrant. Additionally, based on the evidence entered during the suppression hearing, a truck was located near the trailer during Sergeant Matthews's inspection. Even though the presence of a truck was not mentioned in the affidavit, "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory." *Colkley*, 899 F.2d at 301. Otherwise, "[t]he potential for endless rounds of *Franks* hearings to contest facially sufficient warrants is readily apparent." *Id.*

Here, Dubrowski has failed to show a detailed offer of proof that Sergeant Matthews intended to mislead the authorizing judicial officer or exhibited reckless disregard in drafting his affidavit. First, in Sergeant Matthews's affidavit, he makes no approximation of the number of propane tanks around Dubrowski's trailer and simply states that "numerous propane tanks" were nearby. ECF No 21-1 at 2, ¶ 6. The number of propane tanks Sergeant Matthews subsequently estimated under examination by defense counsel is irrelevant. Further, no one, including Dubrowski, contests that "numerous propane tanks" were indeed located around the trailer. Additionally, Dubrowski has presented no evidence, other than mere speculation, to suggest that Sergeant Matthews engaged in an intentional or reckless misrepresentation of the color of the propane tanks around Dubrowski's trailer. Next, the fact that a truck was parked near the camper is a negligible

17

omission compared to the fact that Sergeant Matthews observed that Dubrowski's trailer was the only trailer that did not have tire tracks nearby. Additionally, with regard to Dubrowski's other claims, he presents no other facts to counter the "presumption of validity with respect to [Sergeant Matthews's] affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. Therefore, an evidentiary hearing under *Franks* is not required in this case.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that Defendant's motion to suppress evidence and amended motion be **DENIED**. Because trial is imminent, any party who appears *pro se* and any counsel of record, as applicable, may, by **April 28, 2015**, file with the Clerk of the Court written objections identifying the portions of the report and recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of record. Failure to timely file objections to the report and recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation.

DATED: April 24, 2014            /s/ *James E. Seibert*
                                 JAMES E. SEIBERT
                                 UNITED STATES MAGISTRATE JUDGE